Tod Gamlen, California Bar No. 83458
E-Mail: Tod.Gamlen@bakermckenzie.com
**BAKER & McKENZIE LLP**
660 Hansen Way
Palo Alto, CA 94304
Telephone:  +1 650-856-5504
Facsimile:  +1 650-856-9299

Irene Guiterrez, California Bar No. 252927
Email: irene.gutierrez@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, California 94111
Telephone: +1 415 576 3092
Facsimile: +1 415 576 3099

Attorneys for Defendant
Trend Micro Incorporated. (USA)
(incorrectly named as "Trend Micro Corporation")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRIAN GRAIFMAN, on behalf of himself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>TREND MICRO CORPORATION, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. CV 11-02488 HRL<br><br>Santa Clara County Superior Court Case No. 111CV195495<br><br>**NOTICE TO FEDERAL COURT OF REMOVAL OF A CIVIL ACTION FROM STATE COURT PURSUANT TO 28 U.S.C. §§ 1332(d), 1441 AND 1446**<br><br>Class Action Fairness Act<br><br>Action Filed: March 2, 2011 |

TO THE CLERK OF THE ABOVE TITLED COURT AND PLAINTIFF BRIAN GRAIFMAN AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Trend Micro Incorporated. (USA) (hereinafter "Defendant" or "Trend Micro"), incorrectly named as "Trend Micro Corporation" in the Complaint hereby effects the removal of the below referenced action from the Superior Court of the State of California for the County of Santa Clara ("Superior Court") to the United States District Court for the Northern District of California, San Jose Division.

1

Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201

Case No _____
Notice to Federal Court of Removal of Civil Action from State Court

Removal is pursuant to 28 U.S.C. §§ 1332(d) (the Class Action Fairness Act), 1441(b) and 1446 and is based on the following grounds:[1]

## STATEMENT OF JURISDICTION

1. This Court has original subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA" or the "Act"), which was enacted on February 18, 2005. *See* 28 U.S.C. § 1332(d). In relevant part, the Act grants district courts original subject matter jurisdiction over civil class actions filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant and where the amount in controversy for the putative class members in the aggregate exceeds the sum or value of $5,000,000, exclusive of interests and costs. *Id.* The Act authorizes removal of such actions pursuant to 28 U.S.C. § 1446. As set forth below, this case meets all of the Act's requirements for removal and is timely and properly removed by the filing of this Notice.

## PLEADINGS, PROCESS AND ORDERS

2. On or about March 2, 2011, Plaintiff Brian Graifman ("Plaintiff") filed a Class Action Complaint in the Superior Court of the State of California in and for the County of Santa Clara, *Brian Graifman, on Behalf of Himself, All Others Similarly Situated, and the General Public v. Trend Micro Corporation and Does 1 through 10, Inclusive*, Case Number 111CV195495 (the "Complaint"). As defined in paragraph 30 of the Complaint, Plaintiff and the members of the putative class include all United States customers of Trend Micro "who, after February 7, 2005, extended a Trend Micro software subscription with Trend Micro, at Trend Micro's online subscription renewal website, prior to the expiration of an existing Trend Micro software

---

[1] In support of this Notice of Renewal, Trend Micro is submitting **EXHIBITS A -G**. Included in such exhibits are the Declarations of Wilson Lau ( EXH. C and C-1 to C-6), Erika Knapman (**EXH. D and D-1 to D-2**) and Mark Simpson (**EXH. E and E-1 to E-7**). Certain information in these declarations, and, **EXHS. C-1 to C-6, D-1 to D-2, and E-1 to E-7**, are highly confidential and proprietary to Trend Micro and are referred to herein as "the Confidential Information." Consequently, concurrently with the filing of this Notice of Removal Trend Micro is filing a motion for administrative relief ("Sealing Motion") to have the Confidential Information filed under seal. As a result, in the publicly filed Notice of Removal that is being initially filed, those confidential portions of the Lau (**EXH. C**), Knapman(**EXH. D**) and Spencer (**EXH. F**) Declarations, and, **EXHS. C-1 to C-6, D-1 to D-2, and E-1 to E-7** which constitute the Confidential Information are redacted, subject to the Court's ruling on the Sealing Motion. As of the initial filing, the Confidential Information has been submitted to the Court, under seal, in accordance with the Local Rules related to the filing of materials under seal.

2

Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201

Case No _____
Notice to Federal Court of Removal of Civil Action from State Court

subscription, and whose then-existing subscription was cut off and replaced by the new subscription."

3. Plaintiff's Complaint asserts six causes of action: (1) unfair or deceptive business practices in violation of the Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq*; (2) unlawful, unfair, and fraudulent business practices in violation of the Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq*; (3) false advertising in violation of California Business & Professions Code § 17500, *et seq*; (4) breach of contract; (5) money had and received; and (6) unjust enrichment.

4. Plaintiff served the Complaint, Summons, Notice of Case Assignment, Notice of Complex Designation, ADR Information and Civil Cover Sheet upon Defendant's Agent for Service of Process, on or about April 20, 2011. On or about April 22, 2011, Plaintiff filed in the Superior Court a Proof of Service to the effect that service of the above-referenced papers was made on Trend Micro on April 20, 2011. True and correct copies of the Complaint, Summons, Notice of Case Assignment, Notice of Non-Complex Designation, ADR Information, Civil Cover Sheet and Proof of Service are attached hereto as **EXHIBIT A**, which constitute all pleadings and papers filed in the Superior Court.

5. No further proceedings have been heard or pleadings filed in the Superior Court for the County of Santa Clara.

**JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT**

6. Section 4 of the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), as amended, provides in relevant part as follows:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and is a class action in which . . .
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201

3

Case No _____
Notice to Federal Court of Removal of Civil Action from State Court

7. The Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d) and the case may be removed to this Court by Defendant pursuant to 28 U.S.C. §§ 1441(b) and 1446.

### PURPORTED CLASS ACTION UNDER STATE LAW

8. This case is a putative class action filed pursuant to California Code of Civil Procedure § 382, the California statute that authorizes an action to be brought by one or more representative persons as a class action. *See* Compl., ¶ 1. It is also a putative class action asserting claims under the CLRA; and California Civil Code § 1781 authorizes such actions to be brought as class actions. *See id.*

### CITIZENSHIP

9. In Paragraph 10 of the Complaint, Plaintiff alleges that he is a resident of Hicksville, New York, where he purchased "for personal, family and household purposes" an Asus laptop computer with preloaded Trend Micro antivirus software. Therefore, Plaintiff is domiciled in New York and is a citizen of the State of New York. *See Sun Printing & Publishing Association v. Edwards*, 194 U.S. 377, 383 (1904) (a person is a citizen of the state in which he is domiciled).

10. Plaintiff incorrectly named the Defendant as "Trend Micro Corporation." "Trend Micro Corporation" is a non-existent entity. *See* **EXHIBIT B**, Declaration of Jorge Young at ¶ 2. In Paragraph 9 of the Complaint, Plaintiff states that such "Trend Micro Corporation" has its principal place of business and world headquarters at 10101 N. De Anza Blvd., Cupertino, California. Trend Micro Incorporated (USA), a California corporation, maintains its principal place of business at 10101 N. De Anza Blvd., Cupertino, California. **EXHIBIT B** at ¶ 4. Trend Micro Incorporated (USA) is therefore a citizen of California. *See* 28 U.S.C. § 1332 (a corporation is a citizen of its place of incorporation and its principal place of business); *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010) (a corporation's principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities"). In the United States, all Trend Micro software products are produced and distributed (via license) by Trend Micro Incorporated (USA). **EXHIBIT B** at ¶ 2. Trend Micro Incorporated (USA) is therefore the proper party Defendant in this litigation and is referred to as "Trend Micro." Trend Micro's parent corporation, Trend Micro

4

Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201

Case No _____
Notice to Federal Court of Removal of Civil Action from State Court

Incorporated (Japan), is incorporated under the laws of Japan and maintains its principal place of business in Shibuya-ku, Tokyo, Japan. **EXHIBIT B** at ¶ 2. To the extent Plaintiff intends to name Trend Micro Incorporated (Japan) as the defendant, such entity is a "foreign corporation" and is therefore a citizen of Japan for diversity jurisdiction purposes. *See JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 91 (2002) ("A corporation of a foreign State is, for purpose of jurisdiction in the courts of the United States, to be deemed, constructively, a citizen or subject of such State.").

11. Accordingly, Plaintiff, who is a member of the putative class, resides and is domiciled in the state of New York and is a citizen of a state different from Defendant. Under CAFA, removal is proper where "*any* member of the class of plaintiffs is a citizen of a State different from *any* defendant." 28 U.S.C. § 1332(d) (emphasis added); *see also id.* at § 1453(b) (permitting removal of a class action "without regard to whether any defendant is a citizen of the State in which the action is brought). Therefore, there is diversity of citizenship between the parties within the meaning of CAFA.

## AMOUNT IN CONTROVERSY

12. The Complaint is silent as to the total amount in controversy. *See* Compl. at pp. 13-14. The failure of the Complaint to specify the total amount of damages or other monetary relief sought by Plaintiff, however, does not deprive the Court of subject matter jurisdiction. *See Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006) (plaintiff's failure to plead amount in controversy does not preclude defendant from seeking removal). Rather, the Defendant must simply prove by a preponderance of the evidence that the amount in controversy is satisfied. *Id.* "Said burden is not 'daunting,' as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.* 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008). Rather, the ultimate inquiry is whether it is more likely than not that the Plaintiff's complaint at the instant of removal puts the jurisdictional amount "in controversy," not what the defendant will actually owe. *Id.* For the purpose of this inquiry, the court must "assume that the allegations in the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Id.* at 1205 (citing

Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201

Case No ___
Notice to Federal Court of Removal of Civil Action from State Court

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

13. "The fact that the complaint discloses the existence of a valid defense to the claim does not eliminate federal jurisdiction, nor do events occurring subsequent to the institution of the suit which reduce the amount recoverable below the statutory limit." *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010). As the Ninth Circuit has explained, this is because "if a district court had to evaluate every possible defense that could reduce recovery below the jurisdictional amount the district court would essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction." *Id.* Accordingly, this removal petition calculates the amount in controversy based on the assumption that the facts pleaded in the complaint are true, even though Defendant maintains its right to dispute the truth of those allegations when it asserts its defenses to Plaintiff's claims on the merits.[2]

14. CAFA authorizes the removal of class actions in which the *amount in controversy* in the aggregate for all class members exceeds $5,000,000.00. 28 U.S.C. § 1332(d). Included in this calculation are the amount of compensatory damages, punitive damages, attorneys' fees, and other monetary relief sought by the Complaint. *Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007) (attorneys' fees may be taken into account to determine the CAFA jurisdictional amount.); *see also Vathana v. Everbank*, No. 5:09-CV2338-RS, 2009 U.S. Dist. LEXIS 89320 at *6 (N.D. Cal. Sept. 10, 2009). ("In determining the amount in controversy, courts must take into account not only actual pecuniary damages, but potential damages in the form of punitives and attorney fees.")

15. Although the Complaint does not specify the number of putative class members, Plaintiff seeks to represent all persons and entities residing in the United States "who, after February 7, 2005, extended a Trend Micro software subscription with Trend Micro, at Trend Micro's online subscription renewal website, prior to the expiration of an existing Trend Micro software

---

[2] Defendant denies Plaintiff's claims of wrongdoing, denies that Plaintiff or any member of the putative class has been damaged as a result of the matters alleged in the Complaint, and denies that Plaintiff or any member of the putative class is entitled to any relief from Defendant. Defendant further disputes the methodology by which Plaintiff calculates its damages. Nevertheless, Plaintiff's complaint entitles Defendant to a federal forum for the resolution of this dispute.

Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201

6

Case No _____
Notice to Federal Court of Removal of Civil Action from State Court

subscription, and whose then-existing subscription was cut off and replaced by the new subscription." See Compl., ¶ 30. Based on such class definition and Defendant's review of its subscription records, Defendant calculates the number of potential class members to be *at least* 3.4 million plaintiffs. **EXHIBIT C**, Declaration of Wilson Lau, at ¶¶ 5, 7, and **EXHIBITS C-2** and **C-4** attached thereto.[3]

16. Under the Plaintiff's causes of action such as the CLRA and the UCL, the amount of compensatory damages "in controversy" can best be estimated by calculating the "difference between the actual value of that which the defrauded person parted and the actual value of that which he received." Cal. Civ. Code § 3343(a); *see also Tompkins v. Basic Research LLC*, No. Civ S-08-244 LKK/DAD, 2008 U.S. Dist. LEXIS 81411 at n.8 (E.D. Cal. April 22, 2008). Plaintiff's complaint alleges that class members "parted" with a certain number of days on their previously-existing license subscription, and received no days in return. Compl. at ¶¶ 21-23. The amount of Plaintiff's compensatory damages in controversy is, therefore, the aggregate value of each potential class member's allegedly "cut off" time (hereafter the "overlap period"). Trend Micro has calculated this amount by taking the price the consumer paid for a license in a given year,[4] dividing it by the total days in the subscription period to arrive at a daily value of the license, and then multiplying that by the number of days that were allegedly cut off.[5] **EXHIBIT E**, Declaration of Mark Simpson, at ¶¶ 4-6.

17. Erika Knapman's Declaration supplies the data regarding the average price of a license for each year in a given product type. *See* **EXHIBIT D** at ¶¶ 1-8 and **EXHIBIT D-1** and **D-2**, attached thereto. This was based on the gross revenue Trend Micro received for one-, two-, and

---

[3] As explained in **EXHIBIT C** at footnotes 2-4, these calculations represent only a minimum number of potential class members based on the most easily accessible and calculable data. ¶
[4] The price the consumer paid, as opposed to the revenue Trend Micro recognized from the sale is the proper measure of damages both under the CLRA and the UCL. The UCL permits awards of "money . . . that defendants took directly from [the class members]," *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1146-47 (2003), or indirectly (e.g., through an intermediary retailer), *Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1499 (2007). Here, the revenue Trend Micro recognized from the sale of its products was a certain percentage less than what the consumer paid because the sales were subject to the fees of intermediary retailers, such as Digital River. **EXHIBIT D**, Declaration of Erika Knapman at ¶¶ 4, 7-8.
[5] For those putative class members who converted from a free trial license to a paid license, Trend Micro has estimated the value of the free trial license as the daily value of the paid license with which it was replaced. *See* **EXHIBIT D** at **EXHIBIT D-2** thereto.

Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201

Case No _____
Notice to Federal Court of Removal of Civil Action from State Court

three-year licenses in that product sold in a given year. *Id.* at ¶4. The gross revenue means the total revenue Trend Micro received up front from the sale of a license. *Id.* at ¶6. Each of the three license lengths has a different one-year value because Trend Micro generally provides a discount to customers who purchase a longer-termed license. *Id.* To account for this variation, and to arrive at an overall average, Ms. Knapman created a weighted average of the revenue received for each separate length license of a certain product type sold. *Id.* & **EXHIBITS D -1** and **D-2**, attached thereto. To do this MS. Knapman divided the gross revenue received for the two-year subscription by two, and the gross revenue received for the three-year subscription by three. *Id.* This gave the one year value of the gross revenue received for each of the three license lengths. *Id.* Then, Ms. Knapman took each of these figures, multiplied by the number of those lengths of licenses (one- two- or three-year) sold in that year, and divided by the total quantity of all three types of licenses sold. *Id.* This weighted average one-year price figure for each product type is displayed in the bottom portion of **EXHIBITS D -1** and **D-2**, attached to Ms. Knapman's declaration.

18.     Mark Simpson then took these one-year weighted average license prices and divided by 365 to arrive at a daily value for each license length. **EXHIBIT E** at ¶5, and **EXHIBIT E-1** attached thereto. He then took all of the data compiled by Wilson Lau regarding the number of license renewals ("renewals") and free trial conversions ("conversions") that generated an overlap period (i.e. that took place before the expiration of the previous license term), the exact length of the various overlap periods for which there was available data, and calculated the approximate value of Plaintiff's compensatory damages as pleaded in the complaint. *Id.* at ¶¶ 5–9 and **EXHIBITS E-1– E-7** attached thereto; *see also* **EXHIBIT C** at ¶¶1–10 and **EXHIBITS C-1–C-6** attached thereto (wherein Wilson Lau documents the number of overlaps, and their lengths based on data in Trend Micro's database that allowed Trend Micro to connect license renewals to the user's previous subscription and calculate the number of days each user renewed early). Mark Simpson's calculations are well documented in his Declaration and accompanying exhibits. Suffice it to say that his calculations provide a reasonable and very conservative estimate—as Trend Micro did not perform calculations on all of its various products but only those for which data was readily available—of Plaintiff's compensatory damages as being around at least $4,264,457.23.

8

Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201

Case No _____
Notice to Federal Court of Removal of Civil Action from State Court

19. Although this figure is an approximation of Plaintiff's compensatory damages, "'estimates based on concrete evidence' can adequately establish the amount in controversy requirement." *Keller v. Gaspari Nutrition Inc.*, 2011 U.S. Dist LEXIS 29355 at *7 (C.D. Cal. March 2, 2011) (quoting *Campbell v. Vitran Express, Inc.*, 2010 U.S. Dist. LEXIS 132071, at *3 (C.D. Cal. Aug. 16, 2010). Indeed, a removing defendant is not responsible for "conducting a fact-specific inquiry into whether the rights of each and every potential class member were violated, answering the ultimate question the litigation presents, or trying the case itself for the purposes of establishing jurisdiction." *Vathana*, 2009 U.S. Dist. LEXIS 89320 at *12-13. Here, Trend Micro's estimate of the amount of compensatory damages in controversy is reasonable and based on concrete data. *See* Exhibits C, D, E, and all exhibits attached thereto. In fact, the data Trend Micro compiled approaches the very "fact-specific inquiry" regarding every potential class member that Defendant needs to undertake to satisfy its removal burden.

20. In addition to compensatory damages, the amount in controversy calculation can include a reasonable estimate of attorney's fees likely to be recovered if such fees are recoverable under the relevant cause of action. *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-1011 (N.D. Cal. 2002). Section 1780(d) of the CLRA provides that a court "shall award court costs and attorney's fees to a prevailing plaintiff." In the Ninth Circuit, the benchmark attorney's fee in a class action is 25%. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Accordingly, a 25% attorney's fee is a reasonable estimate of the potential attorney's fees in this case. *See Hartless v. Clorox Co.*, No. 06cv2705-CAB, 2011 U.S. Dist. LEXIS 5427 at *30 (S.D. Cal. Jan. 20, 2011) (a CLRA class action in which the court noted "[u]nder the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent." citing *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 n.13, (Cal. Ct. App. 2009)); *Brailsford v. Jackson Hewitt Inc.*, No. 06-00700 CW, U.S. Dist. LEXIS 35509 at *13-15 (N.D. Cal. May 3, 2007) (noting the 25% benchmark attorney's fee in a California UCL-based class action, and approving a fee of 30%). What makes the 25% estimate even more reasonable in this case is that Plaintiff's attorney's Gary Graifman and Timothy Burke have applied

Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201

for an award of 25% attorneys' fees for class action work in this district court. *See* **EXHIBIT F**, *In re Rambus, Inc. Sec. Litig.*, No. C06-4346 JF, ECF Dkt No. 183 at ¶ 14, (N.D. Cal., filed May 7, 2008) (declaration of Gary Graifman, counsel for plaintiff in this case, in which attorney Graifman applied for 25% award of attorney's fees in a class action on which he and Timothy Burke were co-lead counsel, and wherein he noted that 25% was the benchmark fee in the Ninth Circuit).[6]

21. Although Trend Micro denies that Plaintiff or any of the putative class members are entitled to an award of any damages, relief or attorneys' fees for the claims asserted in the Complaint, in the event the putative class were to be awarded $4,264,457.23 in damages, a 25% attorney's fee award would constitute $1,066,114.30; for a total of $5,330,571.53—which excedes the court's jurisdictional minimum.

22. What is more, potential punitive damages may be included in the amount in controversy calculation so long as they are potentially recoverable as a matter of law. *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002); *Vathana*, 2009 U.S. Dist. LEXIS 89320 at *6. Punitive damages are recoverable under the CLRA, Cal. Civ. Code § 1780(a)(4), Plaintiff's complaint requests an award of punitive damages when it requests "exemplary" damages. Compl. at pp. 13-14; *see Util. Consumer's Action Network v. Sprint Solutions, Inc.*, No. C07-CV2231-W (RJB), 2008 U.S. Dist. LEXIS 34159 at *25 (S.D. Cal. April 25, 2008) (equating exemplary damages with punitive damages). Plaintiff's complaint does not specify an amount of punitive damages sought, but for purposes of determining the amount in controversy by a preponderance of the evidence, the District Court for the Eastern District of California and the Ninth Circuit have held that a 1 to 1 compensatory to punitive ratio is a "conservative" estimate of punitive damages for a CLRA claim. *see Tompkins*, 2008 U.S. Dist. LEXIS 81411 at *12 (relying on a 1:1 punitive to compensatory damages ratio to satisfy the jurisdictional minimum of $5 million in a CAFA removal case); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007)

---

[6] Defendant's request the court take judicial notice of this filing. A federal court "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)); *see also United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

10

Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201

(affirming a district court's denial of a motion to remand where the district court relied on a 1:1 ratio of punitive to compensatory damages to exceed the amount in controversy requirement); *see also Hobbs v. Bateman Eichler*, 164 Cal. App. 3d 174, 196 (1985) ("2.3 ratio of punitive damages to compensatory damages is not disproportionate. In fact, the ratio is comparatively low."); *Alexander v. FedEx Ground Package Sys.*, No. C 05-0038 MHP 2005 U.S. Dist. LEXIS 5129, 15-16 (N.D. Cal. Mar. 24, 2005) ("Defendants' estimate of punitive damages varies between a 2:1 and 10:1 ratio of compensatory damages likely to be awarded. It is true that this range is quite large, but it is also true that even by looking at the low end of this range, plaintiff Henderson's punitive damages would put him well over the minimum jurisdictional amount.").

23. Moreover, District Courts in the Northern District of California hold that a Defendant provides sufficient evidence to meet its burden on reasonably estimating punitive damages when it points to jury awards of punitive damages in other cases under the same cause of action. *See Simmons*, 209 F. Supp. 2d at 1033; *Guglielmino v. McKee Foods Corp.*, 2005 U.S. Dist LEXIS 47024 at *11 (N.D. Cal. May 3, 2005) *aff'd* 506 F.3d 696, 698 (9th Cir. 2007); *Surber v Reliance National Indemnity Co*, 110 F Supp 2d 1227, 1232 (N.D. Cal 2000). Defendant therefore submits **EXHIBIT G**, a compilation of jury verdicts in CLRA cases, and requests the court take judicial notice of these proceedings from other courts.[7] **EXHIBIT G** can be summarized as follows:

- In *Nadelman v. Paul*, 2007 Cal. App. Unpub. LEXIS 9853 (2007), the trial court awarded $100,000 in compensatory damages for violation of the CLRA, and $109,049 in punitive damages. The appellate court affirmed these judgments. This represents a ratio of compensatory to punitive damages of slightly over 1:1.

- In *Gutierrez v. PCH Roulette, Inc.*, 2003 Cal. App. Unpub. LEXIS 9980 (2003), the trial court awarded $1,724 in restitution and $20,000 in compensatory damages. The appellate court affirmed the judgment. This represents a 1:11 ratio of compensatory to punitive damages.

- In *Palmer v. Bahriny*, Superior Court of San Diego County, No. GIN052874—jury awarded $35,150 in compensatory damages and $175,00 in exemplary damages in a CLRA case. This is a 1:5 ratio of compensatory to punitive damages.

- In *Togashi v. Johnson*, Superior Court of San Francisco County, No. CGC-05-443648—a jury awarded $129,650 in compensatory damages and $388,950 in exemplary damages in a CLRA case. This is a is 1:3 ratio of compensatory to punitive damages.

---

[7] *See supra*, note 6.

11

Case No
Notice to Federal Court of Removal of Civil Action from State Court

Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201

- In *Hammermueller v. North American Co. for Life and Health*, Superior Court of Riverside County, No. INC 037361—a jury awarded $3.37 million in compensatory damages and $14 million in punitive damages in a CLRA case. This is a 1:4 ratio of compensatory damages to punitive damages.

- In *Flores v. Phillips College*, Superior Court of Los Angeles County, No. TC 005 272—a jury awarded $633,319 in compensatory damages and $3,382,774 in exemplary damages in a CLRA case. This is a 1:5 ratio of compensatory to punitive damages. The punitive damages award was subsequently reduced to $1,882,774, making the ratio 1:3.

- In *Johnson v. Ford Motor Co.*, Superior Court of Fresno County, No. 647076-9— a jury awarded $17,811.60 in compensatory damages and $10 million in punitive damages in a CLRA case. This is a 1:561 ratio of compensatory damages to punitive damages.

24. In light of the above, an estimate of a 1:1 ratio of punitive damages to compensatory damages is both reasonable and conservative. Using a 1:1 ratio generates a punitive damage amount in controversy of an additional $4,264,457.23, bringing the total to $9,595,028.76—well in excess of the jurisdictional minimum.

25. Although Trend Micro denies all liability to Plaintiff and the putative class and also denies that Plaintiff and the putative class are entitled to any of the relief sought by the Complaint, based upon Plaintiff's allegations, which are assumed to be true at this stage of the litigation, (*See Kenneth Rothschild Trust*, 199 F. Supp. at 1001), the foregoing facts demonstrate that a reasonable estimate of the *amount in controversy* in this case is at least $9,595,028.76. This amount exceeds the $5,000,0000.00 jurisdictional minimum under 28 U.S.C. § 1332(d). Accordingly, this case is properly removed.

## LOCAL CONTROVERSY EXCEPTION DOES NOT APPLY

26. There is an exception for CAFA removal jurisdiction where more than two-thirds of the plaintiff class and at least one primary defendant are residents of the state where the action was brought and the defendant's conduct forms a significant basis of the claims 28 U.S.C. § 1332(d)(4)(A). Of course, as an exception to federal jurisdiction, Plaintiff bears the burden to prove that the local controversy exception applies. *Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007). However, the evidence conclusively establishes that the local controversy exception is not even close to being met here. Only ▬▬ of total renewals and ▬▬ of total conversions for which Trend Micro has data, took place in California. **EXHIBIT C** at ¶¶ 9-10.

Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201

Case No ____
Notice to Federal Court of Removal of Civil Action from State Court

## TIMELINESS OF REMOVAL

27. This Notice of Removal is timely in that it has been filed within thirty (30) days of when Defendant was first served with the Summons and Complaint on or about April 20, 2011.

28. CAFA applies to actions that were "commenced" on or after February 18, 2005. Because this action was filed on March 2, 2011, it was "commenced" on or after February 18, 2005, as required by the Act.

29. Therefore removal is proper under the Act.

## NOTICE TO PLAINTIFF

30. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of such filing will be served on Plaintiff's counsel of record: Timothy J. Burke (SBN 181866), Stull, Stull & Brody, 10940 Wilshire Boulevard, Suite 2300, Los Angeles, CA 90024; Michael S. Green, Green & Associates, LLC, 522 Route 18, PO Box 428, East Brunswick, NJ 08816; and, Gary S. Graifman, Kantrowitz, Goldhammer & Graifman, PC, 210 Summit Ave., Montvale, NJ 07645. In addition, a copy of this Notice of Removal is being filed with the Clerk of the Court for the Superior Court of the County of Santa Clara, California.

WHEREFORE, having provided notice as required by law, the above-entitled action is removed from the Superior Court for the County of Santa Clara to this Court.

Dated: May 20, 2011

BAKER & McKENZIE LLP

By: _____
Tod Gamlen
Attorney for Defendant
Trend Micro Incorporated (USA)

Case No _____
Notice to Federal Court of Removal of Civil Action from State Court

Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201

INDEX TO EXHIBITS IN SUPPORT OF TREND MICRO INCORPORATED (USA)'S NOTICE OF REMOVAL

| Exhibit | Description |
|---|---|
| A | State Court file in *Graifman v. Trend Micro Corporation, et al*, Case No. 111-cv-195495 |
| B | Declaration of Jorge S. Young in Support of Notice of Removal |
| B-1 | • Articles of Incorporation of Trend Software Technology, Inc. |
| C | Declaration of Wilson Lau in Support of Notice of Removal |
| C-1*[1] | • Report – free trial conversions |
| C-2* | • Report – free trial conversions |
| C-3* | • Report – paid license renewals |
| C-4* | • Report – license renewals |
| C-5* | • Report – "free" trial conversions by State |
| C-6* | • Report – license renewals by State |
| D | Declaration of Erika Knapman in Support of Notice of Removal |
| D-1* | • Charts – revenue data and license sales for paid license renewals |
| D-2* | • Charts – revenue data and license sales for free trial conversions |
| E | Declaration of Mark Simpson in Support of Notice of Removal |
| E-1* | • Chart – calculations relevant to determining "amount in controversy" |
| E-2 | • Chart – calculations relevant to determining "amount in controversy" |
| E-3 | • Chart – calculations relevant to determining "amount in controversy" |
| E-4* | • Chart – calculations relevant to determining "amount in controversy" |
| E-5* | • Chart – calculations relevant to determining "amount in controversy" |
| E-6* | • Chart – calculations relevant to determining "amount in controversy" |
| E-7 | • Chart – calculations relevant to determining "amount in controversy" |

---

[1] The exhibits marked with an asterisk ("*") contain proprietary and confidential information, and are the subject of a motion to seal being filed concurrently with this Notice of Removal. Redacted versions of such exhibits and related declaration testimony are being filed in connection with this Notice of Removal.

1

Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201

SFODMS/6624838.2

Case No

| F | Attorney Fee Exhibit |
|---|---|
| G | Compilation of Jury Verdicts Rendering Punitive Damages in CLRA Cases |

2

Baker & McKenzie LLP
2300 Trammell Crow
Center
2001 Ross Avenue
Dallas, TX 75201

SFODMS/6624838.2

Case No